Arthur Waohtel, J.
This is an action to recover the sum of $600 as liquidated damages for alleged breach of contract.
Plaintiff is a general contractor in the business of modernization of home property. Mr. Tambor, president of plaintiff, and Eva Becker, now its secretary, then its bookkeeper and canvasser, obtained orders for home repairs after making a survey of an area and then soliciting business from homeowners found to be in need of such repair. They maintained an office for such purpose and had the orders so solicited taken care of by plaintiff’s u supplier,” the Florence Corporation, which furnished the materials.
On May 12, 1955, Tambor and Mrs. Becker interviewed defendant and he signed a contract for $2,000 for labor and materials in connection with shingle and roofing, and gave Tambor a check for a deposit of $730.
Defendant contends that he was advised by Tambor he could cancel the contract if he was not satisfied; that he did call Tambor’s office that afternoon and left word he was discontinuing the contract, and he stopped the check on May 15, 1955.
Plaintiff relies on the printed conditions on the back of the contract which provide that the contract ‘‘ when signed by the home owner is an irrevocable offer and must be accepted or rejected by Weatherproof Improvement and Contracting Corp., the right to accept or reject being specifically reserved in Weatherproof Improvement and Contracting Corp. only. This agreement becomes effective and binding upon Weatherproof Improvement and Contracting Corp. only when accepted by Weatherproof Improvement and Contracting Corp.”
Plaintiff contends it did accept contract the same night contract was signed, and that it forwarded a letter of acceptance. It did not, however, produce any copy of such letter, and the defendant disputed ever having received such letter. Defendant relies upon subdivision 5 of section 33 of the Personal Property Law which provides as follows: ‘ ‘ When hereafter an offer to enter into a contract is made in a writing signed by the offeror, or by his agent, which states that the offer is irrevocable during a period set forth or until a time fixed, the offer shall not be revocable during such period or until such *102 time because of the absence of consideration for the assurance of irrevocability. When such a writing states that the offer is irrevocable but does not state any period or time of irrevocability, it shall be construed to state that the offer is irrevocable for a reasonable time.”
In accordance with this provision, the defendant claims that inasmuch as the contract does not state any period of time of irrevocability, it shall be construed to state that the offer is irrevocable for a reasonable time only, and that the plaintiff has done nothing up to the present time to accept the offer, and that more than a reasonable time has elapsed. However, there was clearly an acceptance of the contract inasmuch as the same was signed by Mr. Tambor as ‘ ‘ salesman ’ ’ of Weatherproof Improvement and Contracting Corp. (Plaintiff’s Exhibit 1 in evidence), and the evidence supports the inference that Mr. Tambor’s authority included acceptance of the contract.
This leaves for consideration the question as to whether there was an agreement, as claimed by the defendant, Avhereby the defendant had the right to cancel the contract. This is disputed by the plaintiff. The contract provides in the conditions set forth on the back: “ The Home Owner(s) and/or co-signer(s) certified that he has (they have) read each and every part of this contract and that this contract constitutes the entire agreement between Weatherproof Improvement and Contracting Corp. and the undersigned Home Owner(s) and/or co-signer(s) and no agreements, promises or warranties except those herein expressly set forth, have been made by Weatherproof Improvement and Contracting Corp. or its salesman to the undersigned Home Owner(s) and/or co-signer (s) and no modifications thereof shall be claimed by the undersigned Home Owner(s) and/or co-signer(s).”
An oral agreement that the contract is cancelable would contradict the terms of the contract providing for the irrevocability of the offer, and hence, is inadmissible under the parol evidence rule (Mitchill v. Lath, 247 N. Y. 377; Halloran v. N. & C. Contr. Co., 249, N. Y. 381; Ball v. Grady, 267 N. Y. 470; B. H. Krueger, Inc., v. Hearn Dept. Stores, 265 App. Div. 791).
This brings us to the question as to damages. Plaintiff relies upon the provision of the contract which provides as follows: “ The owner(s) and/or co-signer(s) agrees that in the event of any breach of this contract by him (them), at any time, before or after acceptance thereof, Weatherproof Improvement and Contracting Corp. may, at its option, collect 30% of the total consideration herein named as liquidated damages for the breach of said contract, or sue at law for such dam *103 ages as Weatherproof Improvement and Contracting Corp. may establish. Home Owner waives right to trial by jury.”
The rule is that the amount set forth as liquidated damages must be reasonable and not disproportionate to the probable damages, and must have been based on the principle of just compensation, and be such that it may fairly be allowed as compensation for the breach of contract (Wirth & Hamid Fair Booking v. Wirth, 265 N. Y. 214, 222-224; Seidlitz v. Auerbach, 230 N. Y. 167; Downtown Harvard Lunch Club v. Racso, Inc., 201 Misc. 1087; Berkeley v. Philpotts, 182 Misc. 270; Dairymen’s League Co-op. Assn. v. Holmes, 207 App. Div. 429, affd. 239 N. Y. 503).
But there was not sufficient proof to satisfy this court that 30% of the contract price was a reasonable basis for determining loss of profits to this plaintiff in connection with this contract. Mr. Tambor’s estimated loss of profits amounted to $660 based upon cost of material which he listed as follows: shingles, $600; roofing, $240; stone, $500, making a total of $1,340. However, this estimate did not take into account the overhead. Mrs. Becker estimated overhead at “roughly” $600 a month plus salaries. Tambor drew $100 per week; Mrs. Becker $50 per week. Tambor further testified that he gave commissions to Mrs. Becker who acted as bookkeeper and canvasser at the time of this transaction, but the amount of these commissions was not properly established. No attempt was made to prove the actual overhead expense allocated to the transaction in question.
Plaintiff has relied upon the cost of materials which were furnished by his supplier, the Florence Corporation. This is not the proper basis for determining plaintiff’s damages.
As the Court of Appeals said in Devlin v. Mayor of City of New York (63 N. Y. 8, 25-26): “ The measure of damages in an action for a violation of an executory agreement is too well settled by authority to require discussion, and the rule adopted by the courts commends itself for its simplicity, as well as equity and good sense. It secures to the injured party as a compensation only such advantages as the parties must be deemed to have had in their minds in making the agreement, and excludes all contingent and uncertain profits, every thing that may not reasonably be supposed to have been within the contemplation of the contracting parties and would not naturally follow the breach. The party who has been wrongfully deprived of the gains and profits of an executory contract may recover as an equivalent, and by way of damages, the difference between the contract-price, the amount which he would have earned and *104 been entitled to recover on performance, and the amount which it would have cost him to perform the contract. * * * The referee professes to have adopted this rule as the measure of damages, but evidence was given, over the objection of the city, as showing, or tending to show, what it would have cost the contractor to perform the agreement on his part at the prices at which the contractor had sublet large sections and parts of the work. The agents of the city, in agreeing to the prices specified in the contract for the services to be performed, could only have had in their minds the actual and fair cost of the work to the party by whom it should be performed, and the profits to which the contractor would be entitled upon that basis. Any incidental advantages which the contractor could secure by favorable contracts for parts of the work were not in the minds of the parties, and cannot avail to the party seeking damages for the violation of the agreement. Such a contract is not evidence for any purpose against the party who has only undertaken for damages, upon the principle and measured by the rule referred to. It is no evidence that the actual and fair cost of the work would not be greatly in excess of the price agreed to be paid the sub-contractor; and there can be no certainty that the contract would be performed, and the actual gain to the original contractor be the difference between the amounts stipulated in the two contracts. A party is not entitled, in seeking compensation for the loss of gains upon a breach of the contract by the other party, to the benefit of or to be indemnified against a contract made with third persons, not in the contemplation of the parties when the agreement was made. * * * The advantages and benefits of the sub-contracts are quite too uncertain and contingent to be taken into consideration in estimating the profits the original contractor might have made under his contract.” (See, also, Le Herisse v. Meehan, 144 App. Div. 581; Wetter v. Kleinert 139 App. Div. 220.)
Upon the same basis of reasoning, the plaintiff cannot saddle the defendant with loss of profits based upon prices for labor and materials furnished by its subcontractor. The testimony affords the court only speculative basis for determining whether the provision for liquidated damage, namely 30% of the contract price, fairly and reasonably represents plaintiff’s loss of profits, and accordingly, the court finds that this provision is in the nature of a penalty, and cannot be enforced as liquidated damages. This is not a case where the damages of plaintiff are uncertain or difficult to ascertain, where the parties may be permitted to determine the amount of damages in the *105 event of breach; nor is the court satisfied that there is no great disparity between the actual damage and the agreed damage (cf. Downtown Harvard Lunch Club v. Racso, Inc., 201 Misc. 1087, supra, and cases there cited).
Accordingly, the plaintiff is required to prove its actual damages. Inasmuch as plaintiff has failed to sustain its burden of proof in this regard, the complaint is dismissed without prejudice.